IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| OSCAR EDUARDO GALVIS-PENA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 314-083 |
| | ) |
| STACEY N. STONE, Warden, | ) |
| | ) |
| Respondent. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at McRae Correctional Facility, in McRae, Georgia, filed the above-captioned petition pursuant to 28 U.S.C. § 2241 contesting the execution of his sentence of confinement. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

**I. BACKGROUND**

In 2009, Petitioner and seventeen co-defendants were charged in a multi-count indictment with participation in an international drug distribution and money laundering operation. United States v. Galvis-Pena, 1:09-CR-25-TCB-4, doc. no. 1 (N.D. Ga. Jan. 21, 2009). Petitioner was arrested in Colombia on these charges on July 30, 2010, and came into the custody of the United States Marshal after extradition on June 28, 2011. (Doc. no. 1, Exs. 5, 7; doc. no 10, Attach. 2.) Although Petitioner was charged in more than sixty counts, pursuant to a negotiated agreement, he pled guilty to one count of conspiracy to commit money laundering. (Doc. no. 1, Ex.1; doc.

no. 10, Attach. 1.) Prior to sentencing, the government moved for a thirteen-month sentence reduction for substantial assistance, and a twelve and one half month sentence reduction to give Petitioner credit for the time he served in Colombia awaiting extradition to the United States. (Doc. no. 10, Attach. 4.)

At the sentencing on December 12, 2013, United States District Judge Timothy C. Batten, Sr., began the proceedings by addressing objections to the presentence investigation report and setting the advisory sentencing guidelines ("guidelines") range for imprisonment at eighty-seven to 108 months. (Doc. no. 11, p. 2.) Next, Judge Batten granted the government's motion for a downward departure of fifteen percent below the lowest end of the guidelines range, making seventy-four months the low end of the guidelines range. (Id. at 3.)

The government then explained the request in its downward departure motion that Petitioner be given a credit of twelve and one half-months for the time spent in custody in Colombia awaiting extradition. (Id. at 4.) The government requested a twelve and one-half month credit rather than eleven months to account for good time credit Petitioner would have earned had he served those eleven months in a federal prison in the United States. (Doc. no. 10, Attach. 4, p. 4 n.1.) Judge Batten agreed such a credit was appropriate but rounded up to thirteen months, making the low end of the guidelines range sixty-one months. (Doc. no. 11, pp. 4, 7.) The parties also discussed and agreed that Judge Batten would make this jail credit adjustment rather than waiting for the BOP to apply the credit. (Id. at 11-12.) Judge Batten then sentenced Petitioner to a term of fifty-three months of imprisonment and three years of supervised release. (Id. at 15; doc. no. 10, Attach. 1.)

The Bureau of Prisons ("BOP") has calculated Petitioner's projected release date, including good conduct time, as May 2, 2015. (Doc. no. 10, Attach. 2.) The BOP's calculation

includes jail credit from the date the United States Marshal took custody of Petitioner on June 28, 2011, through the date of sentencing, December 12, 2013. (Id.) The calculation does not include the eleven months Petitioner spent in a Colombian prison from July 30, 2010 until his extradition on June 28, 2011. (Doc. no. 1, Ex. 3.) Through the administrative grievance procedure, Petitioner demanded credit for this time, and the BOP denied the grievance because Judge Batten already credited that time when he sentenced Petitioner. (Id.) After exhausting his administrative remedies, Petitioner filed the instant petition, attacking the BOP's refusal to grant double credit for the time he spent in custody in Colombia. (Doc. no. 1, p. 11.)

## II. DISCUSSION

The statute governing sentence credits, 18 U.S.C. § 3585, provides as follows:

> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences-
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

This code section establishes two principles of sentence crediting. First, to qualify for a credit, the defendant must have served the time as a result of either the offense underlying the sentence or an offense for which the defendant was arrested after commission of the underlying offense. 18 U.S.C § 3585(b)(1)-(2). Petitioner satisfies this requirement because he seeks credit for eleven months in a Colombian prison while he awaited extradition to face charges for the offenses underlying the sentence.

Second, under no circumstances may a defendant receive double credit for time served prior to sentencing. Section 3585 expresses this principle in two ways, first by providing that a

3

defendant shall receive credit for "the time he has spent in official detention prior to the date the sentence commences." Id. A defendant must therefore receive credit equal to, but not more or less than, the time in detention prior to sentencing. Second, § 3585 provides that a defendant is ineligible for a credit to the extent time in detention has "been credited against another sentence." Id. In sum, when read together, these components of § 3585 provide that one day in presentence detention equals one day of credit that can be applied only once. Petitioner runs headlong into this core principle of § 3585 by demanding that the BOP credit eleven months of detention in a Colombian prison even though the sentencing judge already gave him credit for that same time period. (See generally doc. no. 1.)

Citing United States v. Wilson, 503 U.S. 329, (1992), Petitioner argues that the BOP must give him double credit because § 3585 authorizes only the BOP to calculate sentence credits and the sentencing judge had no authority to perform this task at sentencing. The BOP must therefore ignore the credit granted by the sentencing judge and grant the credit for a second time. Nothing in Wilson suggests this outlandish outcome.

In Wilson, the Supreme Court reviewed a decision in which the Sixth Circuit remanded a case for resentencing because the District Court denied the defendant's request for a sentence credit under § 3585. Id. at 331. The Sixth Circuit held that the District Court should have granted the request and calculated the credit rather than delegating the task to the Attorney General. Id. The Supreme Court reversed, holding that it is the statutory responsibility of the Attorney General to calculate the credit after sentencing instead of the District Court at sentencing. Id. at 337. In so holding, the Supreme Court explained that the original version of § 3585 expressly delegated this task to the Attorney General, but Congress removed this express delegation when it made a host of changes to the statute in 1987. Id. at 332. The Supreme Court

4

interpreted the 1987 version of § 3585 as still authorizing the Attorney General alone to calculate sentence credits, citing two primary bases for its interpretation. Id. at 333-34.

First, the statute's verb tenses indicate that the calculation must occur after the defendant begins his sentence. Id. at 333. Second, as a practical matter, District Courts sometimes lack all information needed to perform the calculation at the time of sentencing, and the Attorney General "has no choice but to make the determination as an administrative matter." Id. at 333-34. This practical consideration was particularly important in Wilson because the defendant had been charged in state and federal court, and the defendant's federal sentence did not begin until he was sentenced in state court. Id. at 334. Thus, at the time of federal sentencing, the district court could not possibly know the total amount of credit to which the defendant would be entitled. Id.

A multitude of cases citing Wilson are straightforward applications of its holding. Rather than considering a defendant's complaint that the sentencing judge erred by granting the credit at sentencing, these cases concern a defendant's demand for the sentencing judge to grant the credit at sentencing. Courts deny these demands because of the Supreme Court's holding in Wilson that the Attorney General, acting through the BOP, performs the calculation after sentencing.[1] The issue at hand, unresolved by Wilson, is whether the BOP errs when it acknowledges a sentencing judge's grant of a sentence credit, correctly calculated, and rejects a prisoner's request to credit the same time again because doing so would violate the double credit prohibition in § 3585. There are two compelling reasons why the BOP does not err in so doing.

---

[1]See, e.g., United States v. Anderson, 517 F. App'x 772, 775-76 (11th Cir. 2013) (affirming on direct appeal a sentencing court's refusal to grant credit for presentence detention); United States v. Preister, 423 F. App'x 307, 308 (4th Cir. 2011) (same); United States v. Checchini, 967 F.2d 348, 350 (9th Cir. 1992) (same).

5

First, defendants like Petitioner elevate statutory form far over substance by demanding double credit based solely on the technicality that the BOP should have granted the credit after sentencing rather than the sentencing judge during sentencing. While § 3585 does delegate this administrative duty to the BOP, a technical violation of this delegation does not justify violating the statute's core principle of prohibiting double credit. Indeed, Petitioner's request would not erase the technical violation but, instead, would exacerbate the problem by adding an egregious violation of a core § 3585 principle.

Second, and just as importantly, the BOP has not abandoned its administrative duty under § 3585 to determine whether and to what extent Petitioner is entitled to a credit. On the contrary, the BOP determined that (1) the sentencing judge correctly calculated and applied credit for Petitioner's pretrial detention in a Colombian prison; and (2) it could not award Petitioner an additional credit for the same period of detention because of the statutory double credit prohibition. This determination by the BOP is correct, and certainly well within reason under the deferential standard that applies to its interpretation and application of § 3585. See Alabama Power Co. v. F.E.R.C., 22 F.3d 270, 272 (11th Cir. 1994) (holding that courts must defer to agency's construction so long as it is reasonable when Congress has not spoken to the precise issue presented).

The Court found only two cases to consider this precise issue. Not surprisingly, both hold that the BOP should recognize the credit granted by the sentencing judge and not award double credit in violation of § 3585. See Sierra v. Owen, CV 812-00830, 2012 WL 5430945, at *5 (D.S.C. Oct. 16, 2012) report and recommendation adopted, CV 8:12- 00830, 2012 WL 5430445 (D.S.C. Nov. 7, 2012) (finding BOP correctly disallowed credit for time served in pretrial detention because sentencing judge had already granted credit at sentencing); Mehta v.

Wigen, CV 12-257J, 2014 WL 2640895, at *5 (W.D. Pa. June 12, 2014) (rejecting request for credit because sentencing judge already gave it and "any additional credit for this time period would be a double credit in violation of § 3585's qualifying clause.")

Petitioner is misplaced in his citation of Arden v. Haynes, a case recently decided by this Court, because the Court was not presented with, and did not consider, the troublesome issue of double credit. CV 212-061, 2012 WL 5987538 (S.D. Ga. Nov. 29, 2012) report and recommendation adopted, 2013 WL 204764 (S.D. Ga. Jan. 17, 2013). Like here, the issue in Arden was whether the petitioner should receive credit for time spent in a foreign prison before he arrived in the United States to face the indictment. In Arden, however, the sentencing judge had not credited any of the time at the Brazilian prison, but instead merely stated that he gave "some consideration" to the detention in Brazil as one of many factors used to formulate the sentence. Id., Sent. Tr., doc. no. 31-4, p. 14. As this Court explained in Arden, "a sentencing judge considering prior imprisonment as one of many factors when determining a fair sentence is not equivalent to receiving credit a prisoner is owed." Id. at *6. The only credit granted in Arden was for "February 22, 2008 through July 20, 2009, the period of time the defendant was in U.S. custody after he arrived in the U.S" and was granted by the BOP. Id. at *6 n.11. This Court did not double any credit granted by the sentencing judge, but instead merely granted credit not previously given for time spent in foreign incarceration before the petitioner arrived in the United States, for the period of January 22, 2004 through December 17, 2004. Id. at *6.

Finally, even if the Court were to accept Petitioner's argument that Judge Batten erred in awarding jail credit at sentencing, such error would not provide Petitioner with any grounds for relief because Petitioner invited the error. See, e.g., United States v. Haynes, 764 F.3d 1304, 1309 (11th Cir. 2014) ("It is a cardinal rule of appellate review that a party may not challenge as

error a ruling or other trial proceeding invited by that party." ); United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009) (ruling that a party who invites a trial court to err "cannot later cry foul on appeal."); United States v. Wiwo, 481 F. App'x 478, 479 (11th Cir. 2012) (applying invited error rule to § 2255 motion). Indeed, the parties discussed and agreed at sentencing that Judge Batten would apply jail credit rather than waiting for the BOP to do so. (Doc. no. 11, pp. 11-12.)

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 19th day of December, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA